UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REFLEX MEDIA, INC., et al., | Case No.: 2:18-cv-01476-APG-EJY |
| Plaintiffs | **Order Granting Motion for Default Judgment** |
| v. | [ECF No. 72] |
| RICHMEETBEAUTIFUL HOLDING LTD., et al., | |
| Defendants | |

Plaintiff Reflex Media, Inc. operates several online dating websites that use registered trademarks owned by plaintiff Clover8 Investments PTE. Ltd. ECF No. 1 at 3.  The plaintiffs sued defendants RichMeetBeautiful Holding Ltd. and Digisec Media Limited,[1] claiming that the defendants operate competing online dating websites that use the plaintiffs' trademarks on their websites. *Id.* at 5-6.  The plaintiffs assert claims for federal trademark infringement, false designation of origin and false advertising under the Lanham Act, and contributory and vicarious trademark infringement.

After RichMeetBeautiful and Digisec's attorneys withdrew from representing the defendants in this case, the defendants were given time to obtain new counsel and respond to pending discovery requests. ECF No. 56.  The defendants did not obtain new counsel or respond to the discovery requests, so the plaintiffs moved to compel responses and to deem the requests for admissions as admitted. ECF No. 57.  The plaintiffs also requested an order to show cause why the defendants should not be defaulted. *Id.*

---

[1] The plaintiffs also sued Sigurd Vedal, but I dismissed those claims for lack of personal jurisdiction. ECF Nos. 1; 44.

Magistrate Judge Youchah granted the motion and deemed all requests for admission as admitted. ECF No. 61 at 2.  She also granted the motion to compel answers to interrogatories, but she denied the request for an order to show cause without prejudice to the plaintiffs renewing the motion if the defendants did not respond to the interrogatories. *Id.* at 2-3.  Finally, she awarded the plaintiffs attorney's fees. *Id.* at 3.

The defendants did not respond to the interrogatories, so Judge Youchah ordered them to show cause why their answer should not be stricken and default entered against them. ECF No. 64.  After the defendants did not respond to her order, Judge Youchah recommended that I strike the defendants' answer and enter default. ECF No. 67.  The defendants did not object to Judge Youchah's recommendation, so I accepted it, struck the defendants' answer, and instructed the clerk of court to enter default. ECF Nos. 68; 69.

The plaintiffs now move for default judgment in the amount of $6,000,000 and a permanent injunction.  They argue that because the defendants have defaulted, I take as true the amended complaint's allegations.  They also contend that each of the relevant factors for entering default judgment weighs in their favor.

The defendants oppose the motion and argue that although they admitted the amended complaint's allegations through default, they can still challenge whether their conduct caused damages and, if so, the amount of damages.  They contend that the plaintiffs have offered no evidence of actual damages and their calculations are based on speculation.  They further argue that statutory damages are available only in cases of counterfeit marks, which they contend is not the case here.  The defendants also assert that even if statutory damages are appropriate, $6,000,000 is excessive.  Further, they contend that an order to third parties directing them to release the defendants' funds to the plaintiffs is inappropriate.

The plaintiffs reply that the defendants should not be able to present evidence to oppose the default judgment motion because they refused to participate in discovery on these very topics. Alternatively, the plaintiffs request a discovery period to explore the new evidence the defendants attached to their response.

I grant the plaintiffs' motion for default judgment as set forth below.

**I. ANALYSIS**

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, the clerk has entered default against the defendants. ECF No. 69.

After default is entered, a party may seek entry of default judgment under Rule 55(b). The court must accept as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Nonetheless, "entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (simplified). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Whether to grant a default judgment lies within my discretion. *Id.*

I consider the following factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471-72.

### A. Possibility of Prejudice to the Plaintiffs

The first *Eitel* factor considers whether the plaintiffs will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-CV-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016). The defendants have failed to defend the lawsuit. The plaintiffs thus will suffer prejudice absent a default judgment as they will have no other means to litigate their claims. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. This factor weighs in favor of entry of default judgment.

### B. Merits of the Substantive Claims/Sufficiency of the Amended Complaint

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8. Here, the plaintiffs have stated claims for federal trademark infringement, false designation of origin and false advertising under the Lanham Act, and contributory and vicarious trademark infringement.

#### 1. Trademark Infringement

Title 15 U.S.C. § 1114(1)(a) establishes a cause of action for trademark counterfeiting. To prevail on a Lanham Act trademark claim, a plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quotation omitted). The plaintiffs alleged in the amended complaint that they have registered

trademarks in the marks "Mutually Beneficial Relationships," "Relationship on Your Terms," and "Mutually Beneficial Arrangements." ECF No. 27 at 8-9.  They attached the federal registrations to the amended complaint. ECF Nos. 27-9 through 27-12.  Because the defendants defaulted, these facts are admitted.  The plaintiffs therefore have proven they have a protectible ownership interest in the marks.

By defaulting, the defendants have admitted that they used the trademarks on their websites, YouTube, social media pages, and affiliate marketing. ECF No. 27 at 2-3, 5-6, 10-13.  Through the admitted requests for admission, the defendants have admitted that some of the trademarked phrases still appear in the defendants' website's metadata. ECF No. 57-4 at 12-13.  Additionally, the defendants have admitted that they copied user reviews from the plaintiffs' website. ECF No. 1 at 13.  The plaintiffs thus have sufficiently alleged that a consumer may be confused about whether they are accessing the plaintiffs' services through an affiliated website because the same trademark terms and customer reviews are used, suggesting the services offered through the websites come from the same source.

### 2.  Lanham Act False Designation of Origin

The Lanham Act prohibits a person from using "in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval . . . of his or her goods [or] services." 15 U.S.C. § 1125(a).  As discussed with respect to the trademark claims, the defendants have admitted they used the plaintiffs' marks in a manner that is likely to cause consumer confusion about the source of the defendants' services and to create a false association with the plaintiffs' services.

/ / / /

/ / / /

### 3. Lanham Act False Advertising

To state a false advertising claim under § 1125(a)(1)(B), the plaintiffs must show:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
(3) the deception is material, in that it is likely to influence the purchasing decision;
(4) the defendant caused its false statement to enter interstate commerce; and
(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). A commercial advertisement means "(1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services," that is (4) "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (simplified). The complaint alleges, and the defendants therefore have admitted, that the defendants used the plaintiffs' trademarks in affiliate advertising campaigns. ECF No. 27 at 2-4, 12, 14.

### 3. Contributory and Vicarious Trademark Infringement

A defendant contributorily infringes when it "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Vicarious infringement is "related to, but distinct from, contributory infringement." *Id.* at 802. A defendant engages in vicarious copyright infringement when it has "(1) the right and ability to supervise[] the

infringing conduct and (2) a direct financial interest in the infringing activity." *Id.* (internal footnote omitted).

The complaint adequately alleges, and the defendants thus admit, that the defendants knowingly and intentionally induced their affiliates to infringe on the trademarks in advertising campaigns and gave the affiliates material support to do so. ECF No. 27 at 20-21.  Likewise, the complaint alleges the defendants are vicarious infringers because they had the right and ability to supervise the affiliates and had a direct financial interest by obtaining a benefit from the advertising. *Id.* at 21.

### C. Sum of Money at Stake

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quotation omitted); *PepsiCo., Inc.*, 238 F. Supp. 2d at 1176.

Under 15 U.S.C. § 1117(a), the plaintiffs may recover "(1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  If the plaintiffs seek the defendants' profits, then they must prove only the defendants' sales. *Id.* § 1117(a).  If the defendants want to offset that amount by their costs, they bear the burden of proving those amounts. *Id.*  I "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." *Id.*  Additionally, in cases involving use of a counterfeit trademark, I must award "three times [the] profits or damages," unless I find extenuating circumstances. *Id.* § 1117(b).

7

In a case involving use of a counterfeit mark, the plaintiffs may elect to recover statutory damages instead of actual damages and profits. *Id.* § 1117(c). Statutory damages must be "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," unless the use of the counterfeit mark was willful, in which case I may award up to $2,000,000 per mark per type of goods or services. *Id.*

### 1. Actual Damages

The plaintiffs have not presented sufficient evidence to support an award of actual damages. While the defendants have thwarted the plaintiffs' effort in this regard due to their lack of participation in the case, the plaintiffs' calculations are too speculative and built on too many assumptions to determine the defendants' profits. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) ("A speculative [damages] award cannot be upheld."). And the plaintiffs have presented no evidence of any damages they sustained. I therefore deny an award of actual damages.

### 2. Statutory Damages

To award statutory damages for use of a counterfeit trademark, the plaintiffs must show (1) the defendants "intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. A mark is counterfeit if: "(1) it was a non-genuine mark identical to [the plaintiffs'] mark; (2) [the plaintiffs'] mark was registered on the Principal Register for use on the same goods to which [the

defendants] applied the mark; (3) [the plaintiffs'] mark was in use; and (4) [the defendants were] not authorized to use [the plaintiffs'] mark on" the defendants' goods or services. *State of Idaho Potato Comm'n*, 425 F.3d at 721.

      The defendants dispute that their use of the trademarked terms constitutes using a counterfeit mark. But they forfeited their right to make that argument when they defaulted. As discussed above, through default and the admissions, the defendants have admitted that the plaintiffs' trademarks are registered, were in use, and the defendants were not authorized to use them. They also admitted to using the trademarks on their own websites, YouTube, and affiliate marketing, as well as in their website's metadata. And they admitted they intentionally used the marks in commerce knowing their use was counterfeit in connection with the sale, offering for sale, or distribution of their dating service. As discussed above, the defendants admitted that they copied not only the trademarks but also the user reviews on the plaintiffs' website, and thus have admitted facts that their use of the trademarks was likely to confuse or deceive. Finally, the defendants have admitted their conduct was willful, and the evidence of direct copying from the plaintiffs' websites supports that admission. ECF No. 27 at 13; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (stating that upon default "all factual allegations in the complaint are deemed true, including the allegation of [the defendant's] willful infringement of [the plaintiff's] trademarks").

      Consequently, I must consider the award of statutory damages of at least $3,000 ($1,000 per the three marks the defendants used) up to a maximum of $6,000,000 ($2,000,000 per mark). I have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quotation omitted). "Within these limitations the court's

discretion and sense of justice are controlling." *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 232 (1952). I may award statutory damages up to the limit even "for uninjurious and unprofitable" infringements if I "deem[] it just . . . to sanction and vindicate the statutory policy." *Id.* at 233 (in the context of a copyright infringement).

The defendants' copying and use of three different trademarks, along with their failure to completely remove the marks from their websites even after suit was filed, support a substantial award. The most overt use of the plaintiffs' mark is the defendants' use of the "Relationship on Your Terms" mark. *Compare* ECF No. 27 at 10 *with id.* at 11. I therefore award a $1 million statutory award for use of this counterfeit mark. Although the defendants have admitted through default that they used counterfeit marks for the other two marks, the examples that the plaintiffs offer to show counterfeiting are less compelling. *See id.* at 11-12, 15; ECF Nos. 27-3 through 27-7. Consequently, I award only $1,000 each for the use of the marks "Mutually Beneficial Relationships" and "Mutually Beneficial Arrangements."

### 3. Injunction

I have jurisdiction to enjoin trademark infringements. 15 U.S.C. § 1116(a). Section 1116(a) provides that a when seeking a permanent injunction, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation . . . ." A plaintiff seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The defendants have admitted that they were not authorized to use the trademarks, they copied other content from the plaintiffs' website that would suggest an affiliation between their website and the plaintiffs', that "Relationship on Your Terms" and "Mutually Beneficial Arrangement" marks still appear in the defendants' website's metadata, and that the copied user reviews still appear on the defendants' website. ECF No. 57-4 at 12-13. The plaintiffs thus have shown a likelihood of irreparable harm both under the statutory presumption and through these admissions. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). Money damages are inadequate to compensate for that injury, in no small part because the defendants have refused to participate in discovery and thus the benefits they have realized from their prohibited use is unknown. The defendants' use of the plaintiffs' trademarks on their website and in metadata could lead consumers to search for the plaintiffs' protected marks and end up on the defendants' website instead. And if they are dissatisfied with the defendants' services, they may attribute that to the plaintiffs, given the likelihood of confusion the defendants' use of the marks is likely to cause. The loss of business opportunities and potential damage to goodwill are not compensable by monetary damages. The defendants have admitted that the plaintiffs' marks remained in their website's metadata even after this lawsuit was filed, suggesting that the defendants will not voluntarily comply with removing all infringing uses absent an injunction. The balance of hardships tips sharply in favor of the plaintiffs because the defendants have no right to use the trademarks and so are not harmed by being enjoined from using them. Finally, the public interest favors a permanent injunction to enforce the plaintiffs' trademark rights. I therefore grant a permanent injunction as set forth below.

### E. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor weighs the possibility of a dispute regarding material facts in the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.*

Because the allegations in the amended complaint are taken as true, there are no disputes of material fact on liability. Additionally, the defendants have been deemed to admit the requests for admissions. They thus have admitted that they were not authorized to use the trademarks, they copied content from the plaintiffs' website, that "Relationship on Your Terms" and "Mutually Beneficial Arrangement" still appear in the defendants' website's metadata, and that the copied user reviews still appear on the defendants' website. ECF No. 57-4 at 12-13. Although there are some disputes on damages, those disputes do not preclude entry of default judgment on statutory damages or an injunction. This factor therefore weighs in favor of entering default judgment.

### F. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor considers whether the defendants' default is due to excusable neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. The defendants previously appeared in this action and filed two motions to dismiss. ECF Nos. 22, 25, 37. The defendants' counsel withdrew, and the defendants have not participated since then until the motion for default judgment was filed. There thus is no excusable neglect and the defendants do not argue in their response that there was. The defendants' decision not to participate and thereby avoid discovery that may support the plaintiffs' claims weighs in favor of default judgment.

/ / / /

/ / / /

### G. Strong Policy Favoring Decisions on the Merits

The seventh *Eitel* factor considers the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the defendants' failure to participate in this litigation "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, while this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering a default judgment. A decision on the merits is desirable, but under these circumstances, default judgment is warranted.

## II.  CONCLUSION

I THEREFORE ORDER that the plaintiffs' motion for default judgment **(ECF No. 72) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the plaintiffs and against defendants Digisec Media Limited and RichMeetBeautiful Holding Ltd. in the amount of $1,002,000.00.

I FURTHER ORDER that defendants Digisec Media Limited and RichMeetBeautiful Holding Ltd., and each of their officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them, are enjoined permanently from selling, offering for sale, distributing, advertising, or promoting any goods or services that display the plaintiffs' trademarks "RELATIONSHIP ON YOUR TERMS," "MUTUALLY BENEFICIAL RELATIONSHIPS," and "MUTUALLY BENEFICIAL ARRANGEMENTS" in commerce or in connection with any goods or services that are not authorized by the plaintiffs. The court retains jurisdiction to enforce the terms of this injunction order.

I FURTHER ORDER that defendants Digisec Media Limited and RichMeetBeautiful Holding Ltd. must comply with this order within 21 days of receiving notice of it.

I FURTHER ORDER that the plaintiffs must provide a copy of this order to defendants Digisec Media Limited and RichMeetBeautiful Holding Ltd. in the manner approved by this court's order authorizing service via email (ECF No. 18).

DATED this 14th day of September, 2022.

                                _____
                                ANDREW P. GORDON
                                UNITED STATES DISTRICT JUDGE